NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW MILFORD BOARD OF EDUCATION, <br><br> Plaintiff, <br><br> v. <br><br> C.R. o/b/o T.R., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No.: 09-328 (JLL) <br><br> **OPINION** |

For Plaintiff: Vittorio S. LaPira (*Fogarty & Hara, Esqs.*)
For Defendants: Beth A. Callahan (*Callahan & Fusco, LLC*)

**LINARES**, District Judge.

This matter comes before the Court on the cross-motions for summary judgment [CM/ECF #16 & 17] by Plaintiff New Milford Board of Education ("Plaintiff" or "New Milford") and Defendants C.R. and T.R. ("Defendants"). No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendants' motion is granted in part and denied in part and Plaintiff's motion is denied.

## INTRODUCTION

All of the facts herein are drawn from Plaintiff's statement of material facts, Defendants' counterstatement thereto, or the administrative opinion below.

T.R., a child diagnosed as autistic, was born on June 13, 1993. The Board has been educating T.R. since he was 3.5 years old. The Board placed T.R. at IEA, a school in New

-1-

Milford utilizing the applied behavioral analysis ("ABA") methodology.

Defendants filed for due process against the Board in December 2004, resulting in a settlement between the parties. Pursuant to this settlement, T.R.'s parents were to provide him certain in-home education which the Board would partially reimburse. When the Board's reimbursement for these in-home services ended on October 31, 2006, T.R.'s parents continued the services at their own expense.

On June 12, 2007, Defendants again filed for due process against the Board, alleging that T.R.'s 2006-07 and 2007-08 individual education plans ("IEPs") did not provide him with a free and appropriate public education ("FAPE"). Defendants withdrew their due process filing in August 2007, but re-filed on October 1, 2007. The matter was heard by the Hon. Barry N. Frank, A.L.J., who held four days of hearings in January and February 2008. On October 28, 2008, Judge Frank ruled in favor of Defendants.

T.R.'s 2006-07 IEP was developed in a June 19, 2006 meeting that included Board representatives and T.R.'s parents. The 2006-07 IEP placed T.R. at IEA, set certain goals, and indicated that T.R. would receive one home visit per week from an IEA staff member. T.R.'s father asserts that he never received a mailed copy of the 2006-07 IEP, a fact which the Board disputes. T.R.'s parents raised this issue of their failure to receive a copy of the 2006-07 IEP on May 15, 2007.

T.R.'s 2007-08 IEP was developed at a meeting between representatives of the Board and T.R.'s parents on June 8, 2007. T.R.'s parents rejected the 2007-08 IEP because they believed that T.R.'s needs would not be met by the twice monthly home visit it provided for, and they did not believe that an offer of additional parent training would be adequate for T.R.

T.R. was given educational, social, psychological, speech/language, occupational therapy, physical therapy, and behavioral assessments in the summer of 2007, at which time he displayed "subaverage cognitive development and significant limitations in his adaptive behavior." (Pl. 56.1 Statement at 6.)  The Board's Director of Social Services, a certified school psychologist, believes that T.R.'s limitations invite educational goals directed at day-to-day living and social skills.  The evaluations generally indicate that T.R. functioned academically in 2007 as an ordinary child of two to six years old.

On September 11, 2007, the parties met again to discuss the result of the evaluations and T.R.'s eligibility for continued special education services.  Following that meeting, certain members of T.R.'s child study team met[1] and concluded that he would not require in-home education beyond that provided by IEA.  At a meeting in October 2007 discussing the 2007-08 IEP, the Board offered additional IEA home programming hours for T.R., but T.R.'s parents declined, desiring instead that any additional home education be provided  in the form of a private program they had instituted.

In their instant due process complaint, Defendants sought reimbursement for the in-home services they procured for T.R. since November 1, 2006, asserting that an appropriate IEP for T.R. requires substantial in-home instruction to curb his aggression and self-stimulation. Defendants do not claim that IEA is an inappropriate school-day placement for T.R.  The after-school instruction provided by Defendants for T.R. consists of two hours of instruction each day when T.R. comes home from IEA.

Judge Frank found that T.R. was eligible for special education services due to his

---

[1]The record indicates that T.R.'s parents were not present at the meeting.

diagnosis with an autism spectrum disorder. He also found that T.R. exhibited self-stimulatory and aggressive behaviors. After finding the testimony of the Board's witnesses not credible or that their testimony was not based upon sufficient observation of T.R. to support their conclusions, Judge Frank credited the testimony of Defendants' witnesses and found that an after-school program was required to provide a FAPE to T.R.

## DISCUSSION

**A.     Legal Standard**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The Board argues that Judge Frank misapplied the applicable legal standard to T.R.'s facts by failing to give weight to unrebutted testimony by Board witnesses that T.R. was making meaningful progress at IEA, by focusing improperly on the issue of whether T.R. was generalizing skills learned at IEA in the home environment, by impermissibly comparing T.R.'s home program to IEA, by wrongly finding the Board's witness Dr. Sarokoff incredible, by ignoring evidence that T.R. learned skills at IEA that were similar to those taught in the home program, by failing to find Defendants' expert witness incredible, and by ignoring the testimony of two Board witnesses. (Pl. Br. at 10-14, 19-20, 25, 27, 30-35, 35-37.) The Board also maintains that certain evidence presented by Defendants should have been excluded because it was provided too late. (Id. at 37.) Defendants argue that this Court should uphold the ALJ decision and award the attorney's fees to them as prevailing parties. (Def. Br., passim.)

**B.      Admission of Evidence in the Administrative Hearing**

The Board asserts that it was prejudiced by Defendants' belated submission of documentation concerning T.R.'s progress in his home program. (Pl. Br. at 37-40.) Specifically, the Board argues that because Judge Frank did not make a specific finding on the record that the late evidence was excusable, this Court should not consider that evidence in this appeal. (Id.)

The parties agree that N.J.A.C. § 1:6A-10.1(a)-(c) requires a party to provide evidence to be relied on in an administrative hearing five days before such a hearing "unless the judge determines that the evidence could not have been disclosed within that time." Defendants argue that the exhibits, totaling six pages, were one day late and they were provided to the Board on the

same day that they were received by the Defendants. (Def. Opp. Br. at 23.)

This Court finds that although the record does not disclose any specific determination by Judge Frank that the Defendants' delay was excused, Plaintiff has demonstrated insufficient prejudice to exclude these exhibits on the instant motion. The brevity of the exhibits and the fact that they were provided as soon as they were available and only one day into the five-day period persuades this Court not to exclude them at this time.

C.      **Application of the IDEA**

The Third Circuit Court of Appeals has recently restated the standards that this Court is bound to apply in administrative appeals under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. The IDEA mandates that states, in order to receive federal financial support, "make available a free and appropriate public education to all children with disabilities residing within their borders." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 556 (3d Cir. 2010). The education provided under the IDEA must be constructed so as to meet a disabled child's unique needs and provide "significant learning," including a meaningful educational benefit in the least restrictive environment. D.S., 602 F.3d 553, 556 (internal quotation omitted). The individualized instruction is provided through an Individualized Education Plan ("IEP"). Id. 556-57. Should the IEP provided by the state fail to supply the free and appropriate public education the IDEA guarantees, "the state must reimburse the child's parents" for private schooling costs incurred by the parents if such private schooling can meet the standard. Id. at 557. The means of challenging a perceived inadequacy in an IEP is through an administrative proceeding, which New Jersey implemented as a "due process hearing" before an administrative

law judge ("ALJ"). Id. The due process hearing may be appealed to a state court or to a federal district court. Id. at 564.

When reviewing an ALJ decision under the IDEA, this Court applies a modified de novo review, giving "due weight and deference" to the administrative findings. Id. Factual findings from the proceedings below receive the benefit of prima facie correctness. Also, if the ALJ heard live testimony and made credibility determinations, such determinations are given special weight and a district court may disturb them only after finding that extrinsic evidence justifies a contrary result. Id. Credibility determinations by an ALJ can include implicit decisions indicated in the record by acceptance of evidence in the ALJ's opinion. Id. at 566 n.7.

### 1. Credibility Determinations Below

The Board disputes several credibility findings of Judge Frank regarding the live testimony of witnesses. As recently clarified by the Third Circuit in D.S., this Court can only disturb credibility determinations made after hearings in which live testimony was offered if "the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion." D.S., 602 F.3d at 564 (emphasis in original).

This Court finds that the Board has not supplied sufficient non-testimonial extrinsic evidence that can disturb Judge Frank's finding that the opinion of the Board's behaviorist, Dr. Sarakoff, was of diminished value and that her report was based on incomplete evidence. (ALJ Op. at 11.) The Board relies on "unrebutted testimony" at the hearings by several individuals and the report on which Dr. Sarakoff's testimony was based in asserting that Judge Frank's credibility determination was in error. (Def. Br. at 25.) Such evidence, even the corroborating evidence of

other Board witnesses, does not provide the necessary extrinsic or non-testimonial evidence to call Judge Frank's credibility finding with respect to Dr. Sarakoff in question.  Furthermore, such evidence does not rise to the level of "justifying" this Court's rejection of the credibility findings of an administrative law judge who had the advantage of hearing the testimony in question.  D.S., 602 F.3d at 564.  The critical finding in the ALJ Opinion with respect to Dr. Sarakoff's credibility, however, appears to be Judge Frank's finding that Dr. Sarakoff de-emphasized T.R.'s aggression and stereotypical behaviors.  (ALJ Op. at 4.)

Similarly, this Court shall not disturb Judge Frank's finding that the opinion of Defendants' expert, Dr. Delgado, was credible and supported by the record.  (ALJ Op. at 13.)  The evidence proffered by the Board challenging Dr. Delgado's credibility is culled from the cross-examination of Dr. Delgado with respect to her analysis of T.R.'s progress; this cross-examination was conducted before Judge Frank, is testimonial, and was impliedly found in Judge Frank's opinion not to impair the usefulness of Dr. Delgado's testimony.  D.S., 602 F.3d at 566 n.7; Def. Br. at 30-35.  Testimonial evidence, without more, does not suffice to disturb the credibility determinations of an ALJ who has conducted live testimony in an IDEA matter.  D.S., 602 F.3d at 564.  Additionally, while the Board demonstrates that Dr. Delgado's testimony and report were imperfect, it does not supply evidence justifying the displacement of Judge Frank's credibility determination with that of this Court.  Id.  For the foregoing reasons, this Court will not disturb the findings of Judge Frank with respect to the credibility of either Dr. Sarakoff or Dr. Delgado.  Similarly, as the Board's assertions as to the "unrebutted testimony" or unsummarized testimony of certain Board witnesses go to the credibility of said witnesses, whose testimony was explicitly or implicitly not credited in the ALJ opinion, this Court fails to find sufficient evidence

justifying a conclusion different than that of Judge Frank.  <u>D.S.</u>, 602 F.3d at 566 n.7.

    **2.**    **FAPE Analysis**

Judge Frank found that the Board did not provide a FAPE for T.R. because the IEP provided by the Board did not sufficiently address T.R.'s behavioral issues.  (ALJ Op. at 14.)  Furthermore, Judge Frank found that the in-home program supplied by T.R.'s parents was supplying behavioral and communication benefits to T.R., and that the parent training supplied by IEA did not address those issues.  (<u>Id.</u> at 13-15.)  Judge Frank also found that "the home program complements the academic instruction delivered at IEA and is necessary to provide T.R. with a meaningful education." (<u>Id.</u> at 13.)

This Court weighs compliance with the IDEA by examining the IEP.  <u>D.S.</u>, 602 F.3d at 557.  "The IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential."  <u>Shore Reg'l High Sch. Bd. of Educ. v. P.S.</u>, 381 F.3d 194, 198 (3d Cir. 2004) (internal quotations omitted).  The parties here dispute only whether or not a meaningful educational benefit was offered by the Board's IEP for T.R.

The Board argues that Judge Frank impermissibly considered whether or not T.R. was generalizing the skills learned at IEA in his home environment and that Judge Frank erred in comparing the home program and the IEA curriculum.  With respect to the issue of generalization, the Board argues that "a school district is not required to ensure that a student can generalize skills learned at school in all settings to provide a FAPE." (Pl. Br. at 8.)  Relying on <u>Thompson R2-J Sch. Dist. v. Luke P.</u>, 540 F.3d 1143, 1150 (10th Cir. 2008), the Board claims

that it was not necessary for T.R. to generalize skills from school to other environments in order to receive FAPE at IEA. (Pl. Br. at 17-18.) In Thompson, the Tenth Circuit Court of Appeals held that a child making "some progress" in school but not generalizing those skills to the home environment was receiving FAPE. 540 F.3d at 1150, 1152. Thompson, however, applies a "some progress" standard with respect to the student's progress under the IDEA. Id. at 1150, 1152, 1154. This Circuit has expressly mandated the provision of "meaningful educational benefits in light of the student's intellectual potential," not a lesser "some progress" standard that emphasizes "some" rather than "progress." D.S., 602 F.3d at 557. For that reason, this Court finds Thompson distinguishable.

The sole in-circuit authority cited by the Board is D.B. v. Ocean Township Board of Education, 985 F. Supp. 457 (D.N.J. 1997). In D.B., this Court found that failure of a severely disabled child to generalize a skill from the school environment to the home environment could not support, as a sole factor, a residential placement of a student. 985 F. Supp. at 512-13. D.B. stands for the proposition, therefore, that under the "meaningful educational benefit" standard, generalization of skills is a non-dispositive factor in determining whether a residential placement is necessary for a FAPE. 985 F. Supp. at 512-13, 530.

Here, Judge Frank ruled, "[p]roofs show that learning to communicate effectively would enhance T.R.'s basic academic skills and improve his ability to manage himself." (ALJ Op. at 14.) Judge Frank also found that "the home program complements the academic instruction delivered at IEA and is necessary to provide T.R. with a meaningful education." (Id. at 13.) It is true that Judge Frank's opinion is based, to some extent, on the necessity of T.R. to suppress his self-stimulating and aggressive behaviors outside of school, but in finding that the home program

skills were necessary to provide a FAPE to T.R., the record supports a finding that meaningful educational benefit to T.R. at IEA required the at-home program. In particular, Judge Frank relied upon the testimony of Dr. Delgado, Defendants' expert, who testified that T.R.'s ability to learn at IEA requires a home program. (Id. at 9.) Judge Frank did not, therefore, as Defendant argues, simply compare the two programs, but found that the complementary nature of the home program was required for T.R. to receive the meaningful educational benefit mandated by the IDEA, and held that an IEP failing to mandate a substantial home program for T.R.—such as that proposed by the Board—failed to satisfy the IDEA. This Court, therefore, finds that the Board is not entitled to summary judgment, that Judge Frank's decision shall not be disturbed, and that Defendants are entitled to summary judgment on that issue.

C.   **Attorney's Fees**

"In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(I). A "prevailing party" is one "awarded some relief by a court." P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 853 (3d Cir. 2006).

This Court having ruled for Defendants that Judge Frank's ruling shall stand, Defendants are the prevailing party. P.N., 442 F.3d at 853. Defendants, however, admit that their final calculations are in error with regard to the total amount sought. (Def. Reply Br. at 9.) This Court finds, therefore, that Defendants' fee application is denied without prejudice, and that Defendants may re-apply to this Court for fees; however, such an application must be made with corrected invoices and totals.

## CONCLUSION

For the foregoing reasons and as set forth in the accompanying order, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted in part and denied in part. An appropriate order accompanies this Opinion.


DATED: June 21, 2010                                           /s/ Jose L. Linares
                                                            United States District Judge